# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **DANILLE OTTE, et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | Case No. 19-2351-CM-GEB |
| ) | |
| **UMB BANK, N.A.,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on three motions: 1) Defendant UMB Bank's Motion to Sever the Parties (**ECF No. 7**); 2) Plaintiffs' Motion to Amend Complaint (**ECF No. 11**); and 3) Defendant's unopposed Motion to Continue Scheduling Conference (**ECF No. 18**). On November 22, 2019, the Court held a status conference to address scheduling and the three pending motions. Plaintiffs appeared through counsel, Albert Kuhl. Defendant appeared through counsel, Melody Rayl and Jessie Fox Bustamante. After thorough discussion of all pending motions, the Court orally **denied** Defendant's motion to sever (**ECF No. 7**), **granted** Plaintiff's motion to amend (**ECF No. 11**), and **granted in part and denied in part** Defendant's motion to continue scheduling (**ECF No. 18**). (See Order, ECF No. 22.) This written opinion memorializes those rulings.

## I. Background[1]

Plaintiffs Danielle Otte and Amber Kay filed this employment discrimination and retaliation lawsuit against their former employer, UMB Bank, N.A. ("UMB"). Both Otte and Kay were branch managers for UMB. Otte worked in the Atchison, Kansas branch where she was employed from 2006 to June 28, 2018. Otte served as branch manager from 2016-2018. A Senior Vice President, Kristine Batch, made the decision to terminate Otte's employment. (*See* Affidavit, Ex. A, ECF No. 7-1.)

Kay worked in the Pony Express branch in St. Joseph, Missouri from 2013 to May 2018, when she was assigned as a dual Branch Manager for the 6th and Minnesota and Parallel Parkway branches of UMB in Kansas City, Kansas. Kay held that position until she was terminated on January 23, 2019. Cory Stone, Vice President/Regional Delivery Manager, ultimately made the decision to terminate Kay's employment. (*Id.*) Otte and Kay never worked together, had different supervisors, and were terminated by different people.

On June 27, 2019, Otte and Kay filed this lawsuit, stating four counts of state and federal employment claims: (1) Public Policy Retaliation in Violation of Kansas Law (both Plaintiffs, for complaining about unsafe staffing levels) (Count I); (2) Retaliation (for her opposition of race-based discrimination) in Violation of 42 U.S.C. 1981 (Kay

---

[1] Unless otherwise noted, the information recited in this section is taken from Plaintiff's proposed First Amended Complaint (ECF No. 11-1, 23) and Complaint (ECF No. 1); Defendant's Answer (ECF No. 5); the briefing regarding Defendant's Motion to Dismiss (ECF No. 6); the briefs regarding Defendant's Motion to Sever (ECF Nos. 7, 12, 16); and from Plaintiff's Motion to Amend (ECF Nos. 11, 15). This background information should not be construed as judicial findings or factual determinations.

only) (Count II); (3) Unlawful Gender Discrimination in Violation of 42 U.S.C. 2000e (Otte only) (Count III); and (4) Unlawful Gender-Based Retaliation in Violation of 42 U.S.C. 2000e (Otte only) (Count IV).

Defendant UMB answered on September 17, 2019, and the case was set for a scheduling conference on November 22. (Initial Order, ECF No. 14.) But before the Court could move forward with full scheduling, a variety of motions were filed. Those motions included the three motions addressed herein and Defendant's partial motion to dismiss (ECF No. 6), related only to Count I, the state law public policy wrongful discharge claim, for failure to state a claim. Judge Murguia denied the motion to dismiss without prejudice to refiling, in light of Plaintiffs' motion to amend. (Order, ECF No. 17.) The scheduling conference was converted to a status conference (Order, ECF No. 19), and each pending motion, as well as the schedule, were addressed in the November 22 conference. Each motion is discussed below.

## II. Defendant's Motion to Sever Claims (ECF No. 7)

In its motion, Defendant argues Plaintiffs' claims do not arise from the same occurrence, and their claims arise from entirely different facts and violations of different federal law. Although Plaintiffs' Count I state law claims are identical, Defendant seeks to dismiss those claims and argues the Court should not rely on that claim as a basis for joinder. Defendant reasons Plaintiffs did not work at the same UMB location, never worked together, did not have the same supervisor, and were discharged months apart for different reasons. Although they may have voiced similar complaints to their employer, they did so through entirely different reporting chains.

Defendant contends because Plaintiffs' claims are improperly joined, they must be severed into two separate cases. Defendant argues there would be "virtually no common witnesses or evidence such that conducting separate trials would result in duplicative testimony or overlapping proof." (ECF No. 7 at 5.)  Defendant examines Fed. R. Civ. P. 20 regarding proper joinder of parties and claims but does not fully analyze Fed. R. Civ. P. 21, dealing with severance of claims.

Plaintiffs cite no authority in their response (ECF No. 12); they simply argue the nature of their claims to assert the claims should not be severed. They argue the two Plaintiffs were both terminated by the same employer. They maintain both Plaintiffs complained to upper management at UMB specifically regarding serious staff shortages and its effects on workplace safety, which was a systemic issue within UMB's organization. They claim both Plaintiffs were terminated after complaining to management about staffing shortages, so although the Plaintiffs had different immediate supervisors, the issues are the same.  Plaintiffs argue despite the different termination dates and different decisionmakers, they were both wrongfully terminated for raising identical concerns to the same employer.  (ECF No. 12.)

A. **Legal Standard**

Rules 20 and 21 of the Federal Rules of Civil Procedure govern the joinder and misjoinder of parties, respectively.[2]  Regarding proper joinder, Rule 20(a)(1) states:

---

[2] *Roman v. Kellogg Co.*, No. 17-2201-JAR, 2017 WL 4697519, at *1 (D. Kan. Oct. 19, 2017).

> Persons may join in one action as plaintiffs if: (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action.

"The purpose of Rule 20(a) is 'to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits.'"[3] "The Supreme Court has recognized that, under the Rules of Civil Procedure, 'joinder of claims, parties and remedies is strongly encouraged.'"[4]

Rule 21 gives "district courts discretion to sever any claim against a party and proceed with the claim or claims separately."[5] The Court can "sever unrelated claims and afford them separate treatment when to do so would be in the interest of some of the parties," would serve the interests of justice, and would further the prompt and efficient disposition of litigation.[6] The Court weighs the potential prejudice to the movant if severance is denied against the potential prejudice to the nonmovant if severance is granted.[7]

"When determining whether severance is appropriate under Rule 21, the court considers the convenience of the parties, avoiding prejudice, promoting expedition and

---

[3] *Id.* at *2 (citing *Biglow v. Boeing Co.*, 201 F.R.D. 519, 520 (D. Kan. 2001) (quoting 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1652, at 395 (3d ed. 2001)).
[4] *Id.* (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966) (citing Rules 2, 18–20, & 42).
[5] *Roco, Inc. v. EOG Res., Inc.*, No. 14-1065-JAR, 2014 WL 5430251, at *6 (D. Kan. Oct. 24, 2014) (citing *Tab Express Int'l, Inc. v. Aviation Simulation Tech., Inc.*, 215 F.R.D. 621, 623 (D. Kan. 2003)).
[6] *Id.* (citing *Tab Express Int'l, Inc.*, 215 F.R.D at 623).
[7] *Id.* (citing *Tab Express Int'l, Inc.*, 215 F.R.D at 624).

economy, and the separability of law and logic."[8] "A logical relationship exists if there is some nucleus of operative facts or law."[9]

B. Discussion

Neither party analyzes the specific factors outlined above (convenience, prejudice, economy, logical relationship) for determining whether severance is appropriate under Rule 21, aside from more than a passing mention. Most importantly, neither party outlines what prejudice would occur if the opposing party is granted relief, although Defendant does cite a case saying the "prejudicial effect of other parties' discriminatory experiences may outweigh their probative value where the timing of the acts is different, the supervisory authority is different, or the location is different."[10] Defendant argues all these things are present: timing of employment and termination; different supervisors and locations; therefore, the prejudicial effect would outweigh any probative value of combining the claims.

Defendant cites to *Perkins v. Rent-A-Ctr., Inc.*,[11] a 2004 District of Kansas case where the Court granted defendant's motion to sever four of the five plaintiffs' employment claims. In *Perkins*, one plaintiff worked in Kansas, while two worked in New York and two in Oklahoma. In addition to their locations, the plaintiffs' employment dates differed, as did the positions each held. Finding the claims did not

---

[8] *Id.*; *see also Sims v. Kansas Dep't of Corr.*, No. 18-01259-EFM-KGG, 2019 WL 4450671, at *8 (D. Kan. Sept. 17, 2019) (both citing *Old Colony Ventures I, Inc. v. SMWNPF Holdings, Inc.*, 918 F. Supp. 343, 350 (D. Kan. 1996) internal citations omitted). In *Old Colony,* the court denied severance because the issues were "inextricably intertwined with the remainder of the action." *Id.*
[9] *Id.* (citing *MyMail, Ltd. v. Am. Online, Inc.*, 223 F.R.D. 455, 456 (E.D. Tex.2004) (citing *Hanley v. First Investors Corp.*, 151 F.R.D. 76, 79 (E.D.Tex.1993)).
[10] *Wagoner v. Pfizer, Inc.*, 2008 WL 2937249, at *2 (D. Kan. July 24, 2008).
[11] *Perkins v. Rent-A-Ctr., Inc.*, No. 04-2019-GTV, 2004 WL 2182190, at *2 (D. Kan. Sept. 21, 2004).

meet the two-part test of Rule 20, the Court ordered severance of the New York plaintiffs' claims and the Oklahoma plaintiffs' claims, and transferred venue of those claims to the respective courts in the states where the plaintiffs had been employed. The court noted, "Severance is particularly appropriate where . . . the court determines venue should be transferred as to some claims or parties."[12] The court transferred venue after determining the convenience of parties and witnesses favored separate trials in each venue. The court found, "The fact that all of the claims revolve around alleged discrimination, even a pattern and practice of discrimination, simply is not enough to outweigh the practical difficulties that a single trial in Kansas presents."[13]

But such practical difficulties are not evident here. In this case, there are only two plaintiffs, and the locations of their employment are within 50 miles[14] of one another, with a trial in Kansas City being the most convenient location for a trial related to *either* place of employment. If separate trials were to be ordered, the two trials would likely occur in the *same* courthouse.

And, more similar to the facts of the instant case is the *Wagoner v. Pfizer*[15] case cited by Defendant. In *Wagoner*, the three plaintiffs were all former Pfizer employees. One worked for 26 years in the Wichita, Kansas area; one for approximately 17 years in the Southern Oklahoma area; and one for approximately three years in the Tucson,

---

[12] *Id*. (quoting *Tab Express Int'l, Inc. v. Aviation Simulation Tech., Inc.,* 215 F.R.D. 621, 624 (D.Kan.2003)).
[13] *Id*. at *3.
[14] According to Google Maps, Atchison is approximately 47-53 miles from Kansas City, depending upon route. Atchison is approximately 55-65 miles from Topeka, Kansas, depending upon route.
[15] *Wagoner*, 2008 WL 2937249, at *2

7

Arizona area.[16] Each plaintiff reported to different supervisors, and each was ultimately terminated from his position. Each plaintiff claimed discrimination under the ADEA, and two plaintiffs also claimed intentional infliction of emotional distress.[17] Noting severance is discretionary, the Court found:

> . . . while the plaintiffs worked in different places and were fired at different times, the allegation that Pfizer pursued a discriminatory policy satisfies Rule 20's two-part standard. As such, at least at this pretrial juncture, the court finds that it is proper to join the plaintiffs' claims against Pfizer.
> Discovery is nearing an end and the dispositive motion deadline rapidly is approaching. The parties may raise this issue in connection with the final pretrial conference, an approach other courts have adopted.[18]

Similarly, in *Roman v. Kellogg Co.*,[19] Judge Robinson denied severance, finding:

> As to the second requirement of Rule 20(a), the court recognizes that not all issues of law and fact overlap. However, "[m]ultiple plaintiffs are free to join their claims in a single suit when '*any* question of law or fact common to all plaintiffs will arise in the action. Not *all* questions of law or fact need be common; rather, only *some* questions must be common. Moreover, the "common question need not predominate; that's a requirement for class actions, not for permissive joinder.[20]

### C. Conclusion on Motion to Sever

Despite the different locations, supervisors and dates of employment/termination, the application of the above standards leads this Court to deny Defendant's motion. Applying its discretion, the Court finds the facts of this matter are more similar to the *Wagoner* case than to *Perkins*, where the plaintiffs were located in different states. And, the common nexus of Plaintiffs' claims is the culture of UMB regarding staffing

---

[16] *Id.*
[17] *Id.*
[18] *Wagoner v. Pfizer, Inc.*, No. 07-1229-JTM, 2008 WL 2937249, at *3 (D. Kan. July 24, 2008).
[19] *Roman v. Kellogg Co.*, No. 17-2201-JAR, 2017 WL 4697519, at *2 (D. Kan. Oct. 19, 2017).
[20] *Roman*, 2017 WL 4697519, at *2 (internal citations omitted).

shortages, and the retaliation both Plaintiffs claim as a result of complaining about understaffing. As in *Roman*, although not <u>all</u> issues of law and fact overlap, both Plaintiffs claim they complained about the safety concerns with understaffing, resulting in their termination—therefore, there is a common issue of law and fact. Even though Defendant argues it is seeking dismissal of this single joint claim, the claim remains in the case at this point. In the event that claim is eventually dismissed, Defendant may again raise the issue of severance at pretrial.

Although Defendant briefly mentions prejudice, it does not convince the Court that the potential prejudice to Defendant of facing two employment claims in the same case outweighs Plaintiffs' freedom to choose how to pursue their claims. Joinder of parties and claims is encouraged and severing these parties would result in less efficiency for the parties—in pursuing and defending two lawsuits rather than one—and certainly less efficiency for the Court, given severance would result in two cases pursued in the same courthouse. And, any prejudice to Defendant in defending two discrimination claims at one time is more of a concern for trial—not for the discovery process. In fact, had these claims been filed separately, the undersigned would likely have considered consolidating the cases for discovery purposes. As noted above, Defendant could raise the issue of severance again at pretrial.

For the reasons stated herein, Defendant's Motion to Sever the Parties (**ECF No. 7**) is **DENIED**.

**III. Plaintiff's Motion to Amend Complaint (ECF No. 11)**

As previously mentioned, Defendant filed a motion to dismiss Count I of Plaintiffs' complaint—the state law public policy retaliation claim. (Def.'s Motion, ECF No. 6.) Generally, Count I alleges Plaintiffs were whistleblowers who notified UMB about unsafe staffing levels, resulting in their retaliatory termination. Defendant's motion argues Count I of the original Complaint failed to sufficiently allege the "violation of rules, regulations, or the law pertaining to public health, safety and the general welfare" and as such was insufficient to plead a proper cause of action under Kansas law pertaining to the public policy retaliation rule of employment. (*Id*.)

In response to the motion to dismiss, Plaintiffs filed a request to file a First Amended Complaint. (ECF No. 11.) In their proposed Amended Complaint, Plaintiffs clarify the law they believe was violated by UMB. They cite 12 U.S.C. § 1882(a), as well as its implementing regulation found at 12 C.F.R. 326.0(a), which together outline a standard for basic security measures to be implemented by federally-regulated banking institutions. Plaintiffs claim they were whistleblowers, reporting their employer for failing to hire and provide enough employees to provide security procedures to prevent or discourage robberies, burglaries, and larcenies. (ECF No. 11.)

The proposed Amended Complaint states, "Plaintiffs . . . would find their staffing levels as dictated to them by their management to present a safety and security threat given the reality that criminals seeking to prey upon banking institutions were well known to case or pre-evaluate the level of staffing in a bank environment before then attempting to commit a robbery upon the subject banking premises." (ECF No. 11-1 at 2-

3, ¶ 11.) The proposed amendment cites to the requirements of 12 U.S. C. § 1882(a), as well as 12 C.F.R. 326.0(a), which "mandate that banking institutions such as defendant effectively establish and maintain 'procedures … to discourage robberies, burglaries, and larcenies and to assist in the identification and apprehension of persons who commit such acts.'" (*Id.* at 3, ¶ 12.) They claim although they notified their employer, their concerns were ignored and eventually they were terminated in retaliation for raising the safety concerns. (*Id.* at 3, ¶¶ 13-14.)

Defendant opposes amendment, solely on the basis of futility, claiming the proposed amendment does not cure the deficiencies of the original complaint. Defendant argues two problems remain in Count I of the proposed amendment: (1) making a "recommendation" to their supervisors about appropriate staffing levels is insufficient to state a claim for retaliatory discharge—they must have actually *reported* the *violation* of rules, regulations or laws. (ECF No. 15 at 3.) And, (2) 12 U.S.C. 1882(a), the statute cited by Plaintiffs in their proposed First Amended Complaint, contains no provision regarding legally-required staffing levels.

Defendants argue 12 U.S.C. 1882(a) requires the federal banking <u>agency</u>—not individual banks—to establish safety rules that apply to individual institutions. It is the federal regulations—which Plaintiffs do cite in their proposed amendment—that require individual institutions to adopt security procedures that discourage robberies, burglaries and larcenies. (ECF No. 15 at 4.)

### A. Legal Standard for Amendment

The standard for permitting a party to amend his or her complaint is well established. A party may amend its pleading as a matter of course under Fed. R. Civ. P. 15(a)(1), either before the responding party answers or within 21 days after service of a responsive pleading. In cases where the time to amend as a matter of course has passed, without the opposing party's consent a party may amend its pleading only by leave of the court under Rule 15(a)(2).

Rule 15(a)(2) provides leave "shall be freely given when justice so requires," and the decision to allow an amendment is within the sound discretion of the court.[21] The court considers a number of factors in deciding whether to allow an amendment, including timeliness, prejudice to the other party, bad faith, and futility of amendment.[22] In exercising its discretion, the court must be "mindful of the spirit of the federal rules of civil procedure to encourage decisions on the merits rather than on mere technicalities."[23] The Tenth Circuit Court of Appeals acknowledged that Rule 15 is intended "to provide litigants 'the maximum opportunity for each claim to be decided on its merits rather than

---

[21] *See J. Vangel Elec., Inc. v. Sugar Creek Packing Co.*, No. 11–2112–EFM, 2012 WL 5995283, at *2 (D. Kan. Nov. 30, 2012) (citing *Panis v. Mission Hills Bank*, 60 F.3d 1486, 1494 (10th Cir. 1995)).
[22] *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also Monge v. St. Francis Health Ctr., Inc.*, No. 12–2269–EFM-JPO, 2013 WL 328957, at *2 (D. Kan. Jan. 10, 2013), *report and recommendation adopted*, 2013 WL 328986 (D. Kan. Jan. 29, 2013).
[23] *Hinkle v. Mid-Continent Cas. Co.*, No. 11–2652–JTM-KMH, 2012 WL 2581000, at *1 (D. Kan. July 3, 2012) (citing *Koch v. Koch Indus.*, 127 F.R.D. 206, 209 (D. Kan. 1989)).

on procedural niceties,'"[24] especially in the absence of bad faith by an offending party or prejudice to a non-moving party.[25]

### B. Futility of Amendment

As the party opposing amendment, Defendant bears the burden of establishing its futility.[26] "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal."[27] The proposed pleading is then analyzed using the same standard as a motion to dismiss under Fed. R. Civ. P. 12(b)(6). When utilizing this standard, "the court must accept as true all well-pleaded factual allegations and view them in the light most favorable to the pleading party."[28] Only if the court finds "the proposed claims do not contain enough facts to state a claim for relief that are plausible on their face or the claims otherwise fail as a matter of law"[29] should the court find the amendment futile.

### C. Discussion

Upon review of Plaintiffs' motion, the Court realized Plaintiff was not required to seek leave of Court to amend the complaint under these facts. Defendant answered on September 17, 2019 and filed its motion to dismiss Count I that same day (along with its

---

[24] *Carefusion 213, LLC v. Professional Disposables, Inc.*, No. 09–2616–KHV–DJW, 2010 WL 4004874, at *4 (D. Kan. Oct. 12, 2010) (citing *Minter,* 451 F.3d at 1204) (quoting *Hardin v. Manitowoc–Forsythe Corp.,* 691 F.2d 449, 456 (10th Cir. 1982)).
[25] *See AK Steel Corp. v. PAC Operating Ltd. P'ship*, No. 15-9260-CM-GEB, 2016 WL 6163832, at *4 (D. Kan. Oct. 24, 2016) (collecting cases; internal citations omitted).
[26] *Neonatal Prod. Grp., Inc. v. Shields*, No. 13-2601-DDC-KGS, 2015 WL 1957782, at *2 (citing *Boykin v. CFS Enter., Inc.,* No. 08–2249–CM–GLR, 2008 WL 4534400, at *1 (D. Kan. Oct. 6, 2008)).
[27] *Farmers Bank & Trust, N.A. v. Witthuhn*, No. 11-2011-JAR, 2011 WL 5920941, at *2 (D. Kan. Nov. 28, 2011) (citing *Jefferson Cnty. Sch. Dist. No. R–1 v. Moody's Investors's Servs., Inc.,* 175 F.3d 848, 859 (10th Cir. 1999)); *see also Neonatal Prod. Grp.*, 2015 WL 1957782, at *2 (internal citations omitted).
[28] *Carefusion 213*, 2010 WL 4004874, at *5 (citing *Anderson v. Suiters,* 499 F.3d 1228, 1238 (10th Cir. 2007) (internal citations omitted)).
[29] *Id.* (citing *Raytheon Aircraft Co. v. U.S.,* 501 F. Supp. 2d 1323, 1327 (D. Kan. 2007); *see also Burnett v. Mortgage Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))).

motion to sever). Plaintiffs filed their request to amend on October 8, 2019—exactly 21 days after Defendant's responsive pleading. By plain reading of Rule 15(a)(1), Plaintiffs could have simply filed their Amended Complaint as a matter of course, without seeking Court approval. Therefore, Plaintiff's motion to amend may be granted as a matter of course without further analysis.[30]

Even if the Court analyzed futility, at this stage, Plaintiffs' amendment appears plausible. Although Defendant may be correct that 12 U.S.C. § 1882(a)—the statute cited by Plaintiffs in their proposed First Amended Complaint—contains no provision regarding legally-required staffing levels, Plaintiffs clearly incorporated the federal regulations which apply the statute to banks; therefore, this does not appear to be a fatal defect. And, whether Plaintiffs made a "recommendation" or "reported a violation" is a distinction that can be made clearer through discovery and addressed in dispositive motions. At this early stage, there is no prejudice to Defendant (and Defendant argues none) by permitting amendment.

For the reasons stated above, Plaintiffs' Motion to File First Amended Complaint (**ECF No. 11**) is **GRANTED**. Plaintiffs were previously ordered to file their amended pleading, and they did so on December 2, 2019. (First Am. Compl., ECF No. 23.)

---

[30] *See, e.g. McCray v. Kansas, Dep't of Revenue*, No. 12-2188-JWL, 2012 WL 3758667, at *1 (D. Kan. Aug. 30, 2012). In *McCray*, plaintiff filed a motion to amend within 21 days of defendants' motion to dismiss. Although defendants opposed the motion to amend, Judge Lungstrum granted plaintiff's motion after noting his ability to amend as a matter of course under Rule 15(a)(1).

## IV. Defendant's Unopposed Motion to Continue Scheduling Conference (ECF No. 18)

In Defendant's unopposed motion, it argues it "does not wish to commit to deadlines and begin conducting discovery without knowing whether it will have to defend the Plaintiffs' claims in one lawsuit or two." (ECF No. 18 at 2.) They asked to postpone the scheduling conference and all related deadlines to allow the Court to rule on all pending motions, which would permit the parties to "make more informed decisions about discovery, dispositive motions and trial." (*Id*.)

In effect, the Court **GRANTED** this motion in part, because the scheduling conference was converted to a status conference and the Court suspended the parties' deadlines to submit a planning report and disclosures. (*See* Order, ECF No. 19.) However, given the oral rulings on the motions, there is no need to further continue scheduling. During the November 22 conference, the Court established new deadlines for submission of the parties' planning report and initial disclosures, and set a scheduling conference for February 11, 2020 at 10:00 a.m. (Order, ECF No. 22.)

## V. Conclusion

As set forth above, the Court enters the following orders:

**IT IS THEREFORE ORDERED** that Defendant's Motion to Sever the Parties (**ECF No. 7**) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to File First Amended Complaint (**ECF No. 11**) is **GRANTED**.

15

**IT IS FURTHER ORDERED** that Defendant's Unopposed Motion to Continue Scheduling Conference (**ECF No. 18**) is **GRANTED in part and DENIED in part**.

**IT IS SO ORDERED**.

Dated at Wichita, Kansas this 13th day of December, 2019.

                                     s/ Gwynne E. Birzer
                                     GWYNNE E. BIRZER
                                     United States Magistrate Judge