### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

DANIELLE OTTE and AMBER KAY,

    *Plaintiffs,*

vs.

UMB BANK N.A.,

    *Defendant.*

Case No. 19-02351-EFM-GEB

## MEMORANDUM AND ORDER

Plaintiffs Danielle Otte and Amber Kay bring claims against Defendant UMB Bank N.A. ("UMB") for public policy retaliation in violation of Kansas state law, retaliation in violation of 42 U.S.C. § 1981, gender discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, violation of the Equal Pay Act, and breach of implied contract. UMB has filed a Partial Motion to Dismiss (Doc. 42) requesting dismissal of the public policy retaliation and breach of implied contract claims. It contends that Plaintiffs have failed to state a claim on which relief can be granted for the public policy retaliation claim because they fail to allege that they complained about a violation of rules, regulations, or law. It also contends Plaintiffs fail to plead sufficient facts to support a plausible claim that an implied contract existed between Plaintiffs and UMB. For the reasons stated in more detail below, the Court grants the motion in part and denies it in part as moot.

## I.   Factual and Procedural Background[1]

Otte worked for UMB as a Branch Manager for almost 13 years before her termination in June 2018.  Kay also worked as a Branch Manager for nearly six years until she was terminated in January 2019.  Both Plaintiffs allege that they performed at a satisfactory level throughout their employment.

On multiple occasions, Plaintiffs expressed their concerns to management employees at UMB regarding staff shortages.  Plaintiffs worried that having short-staffed branches would expose the bank to a risk of robbery because prospective robbers might case out the branch and determine that there would be little risk in robbing a place with so few people.

Plaintiffs maintain that in retaliation for their complaints to management about the short staffing problem, UMB terminated them.

Plaintiffs first filed suit in June 2019.  Since that time, the Complaint has been amended twice.  Also, since the Motion to Dismiss currently before the Court was filed, Plaintiffs have filed a Stipulation of Dismissal, voluntarily dismissing the counts of violation of the Equal Pay Act and breach of implied contract.

## II.   Legal Standard

Under Rule 12(b)(6), a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted.[2]  Upon such motion, the court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible

---

[1] The facts are taken from Plaintiffs' Second Amended Complaint and are accepted as true for the purposes of this ruling.

[2] Fed. R. Civ. P. 12(b)(6).

on its face.' "[3] A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct.[4] The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of claims as well the grounds on which each claim rests.[5] Under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint, but need not afford such a presumption to legal conclusions.[6] Viewing the complaint in this manner, the court must decide whether the plaintiff's allegations give rise to more than speculative possibilities.[7] If the allegations in the complaint are "so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.' "[8]

### III.   Analysis

Kansas subscribes to the doctrine of employment-at-will. Where there is no express or implied contract regarding duration of employment, unless an exception applies, an employer or an employee may terminate the employee's job at any time for any reason.[9] One of those

---

[3] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[4] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[5] *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

[6] *Iqbal*, 556 U.S. at 678–79.

[7] *See id.* ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." (citation omitted)).

[8] *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570).

[9] *Palmer v. Brown*, 242 Kan. 893, 752 P.2d 685, 687 (1988) (citation omitted).

exceptions, the one relevant to this case, is retaliation for whistleblowing.[10] Kansas law follows the *McDonnell Douglas v. Green*[11] framework for wrongful discharge claims, requiring plaintiffs to show a prima facie case of retaliatory intent before the burden shifts to defendants.[12] To show a prima facie case for whistleblowing retaliation, plaintiffs must show that (1) a reasonably prudent person would have concluded that plaintiff's co-worker or employer was violating rules, regulations or the law pertaining to public health, safety and general welfare; (2) the whistleblowing was done in good faith based on a concern regarding that wrongful activity, rather than a corrupt motive like malice, spite, jealousy or personal gain; (3) the employer knew of the employee's report before it discharged the employee; and (4) defendant discharged the employee in retaliation for making the report.[13]

Plaintiffs assert that in retaliation for the concerns they expressed about short staffing in their respective branches, their jobs were terminated. They further allege that this short staffing was in violation of the requirements of 12 U.S.C. § 1882(a) and 12 C.F.R. § 326.0(a). However, they do not expressly indicate which existing exception to the Kansas at-will employment doctrine, if any, they are claiming. UMB argues that the Complaint can best be framed as a whistleblowing retaliation claim, and the elements required to prove a prima facie case of such a claim should apply here. Specifically, it argues that Plaintiffs have failed to meet the first element because they fail to point out a particular violation of either law they cite. Plaintiffs argue that rather than

---

[10] *Id.* at 689–90.

[11] 411 U.S. 792, 824 (1973).

[12] *Balfour v. Medicalodges, Inc.*, 2006 WL 3760410, at *12 (D. Kan. 2006).

[13] *Id.* at *14 (citing *Goodman v. Wesley Med. Ctr., L.L.C.*, 276 Kan. 586, 78 P.3d 817, 821 (2003)).

alleging a specific violation of law, they were attempting to be "proactive and progressive"[14] in addressing their concerns to management. Therefore, they maintain, they should not be required to find a "step-by-step, bullet point list"[15] and enumerate specific violations of the law to receive whistleblower protection. In other words, Plaintiffs evidently object to being held to the whistleblower retaliation standard. UMB counterargues that this is an attempt to establish a new exception to Kansas's general at-will employment doctrine, which courts are not inclined to do.

Regarding whether this claim is for whistleblower protection or is an attempt to create a new exception to the Kansas at-will employment doctrine, the Court concludes that Plaintiffs are functionally claiming whistleblower protection regardless of their stated intentions. New exceptions to the at-will employment doctrine in the interest of protecting public policy are only allowed when "public policy [is] clearly declared by the constitution, statutory enactments, or the courts, and it must be so united and so definite and fixed that its existence is not subject to any substantial doubt."[16] The interest in having adequate staff at banks is nowhere close to this lofty threshold such that it requires a new exception to the at-will employment doctrine. Instead, the Complaint is already well formulated to serve as an argument for a whistleblower retaliation claim. The Complaint is structured around the citation of laws that Plaintiffs determined their branches were violating, their reports of these violations, and their subsequent termination for these reports. As such, their claim will be held to the standard of a whistleblower retaliation claim.

---

[14] Doc. 48, at 4.

[15] Doc. 48, at 4.

[16] *Campbell v. Husky Hogs, L.L.C.*, 292 Kan. 225, 255 P.3d 1, 5 (2011) (citation and quotation marks omitted).

To analyze the claim under the whistleblower retaliation standard, first the Court addresses whether Plaintiffs plausibly allege that UMB violated 12 U.S.C. § 1882(a).  The statute provides that "each Federal supervisory agency shall promulgate rules establishing minimum standards with which each bank or savings association must comply" regarding safety and security measures.[17]  The term "Federal supervisory agency" is defined as either the Office of the Comptroller of the Currency, the Federal Deposit Insurance Corporation ("FDIC"), or the Board of Governors of the Federal Reserve System.[18]  In other words, such agencies oversee banks, but the term does not itself include banks.  As a result, the text of the statute requires action only on the part of these agencies to make rules, not on the part of banks themselves.  Banks are obliged to follow the rules that Federal supervisory agencies promulgate in accordance with this rule, but § 1882 does not impose any specific requirements on banks.  Therefore, this statute is irrelevant to this claim.

However, 12 C.F.R. § 326.0, which was enacted by the FDIC pursuant to 12 U.S.C. § 1882, does impose requirements that banks must follow.  It provides in relevant part that each member FDIC institution must "adopt appropriate security procedures to discourage robberies, burglaries, and larcenies and to assist in identifying and apprehending persons who commit such acts."[19]  Plaintiffs allege that their respective branches were in violation of this law because the short staffing at each branch was so severe that it would entice would-be bank robbers to attempt robbery at the poorly defended banks.  In other words, the short staffing in these branches was not an

---

[17] 12 U.S.C. § 1882(a).

[18] 12 U.S.C. §§ 1881, 1813(q).

[19] 12 C.F.R. § 326.0(a).

"appropriate security procedure" as required by 12 C.F.R. § 326.0.  Plaintiffs further allege that raising concerns about this violation was what led their superiors to terminate them.

UMB claims that the Complaint fails to meet the requirements of a whistleblower retaliation claim because Plaintiffs fail to allege facts such that "a reasonably prudent person would have concluded that plaintiff's co-worker or employer was violating rules, regulations or the law pertaining to public health, safety and general welfare."[20]  The Court agrees.

The core of Plaintiffs' argument is that their branches were understaffed and thus in danger of robbery, and this is a violation of 12 C.F.R. § 326.0.  However, § 326.0 is not the part of the law that enumerates what the actual security procedures of a member FDIC bank must be; it is the part that states the authority, purpose, and scope of the law.  The actual security protocols that must be observed by member FDIC banks are enumerated in 12 C.F.R. § 326.3.  The list of these protocols is expansive and specific, requiring things like retaining robbery records, maintaining surveillance equipment, owning a secure vault, etc.  However, nowhere on the list of protocols is there any requirement related to staffing branches or the number of employees that must be present for security reasons.  Plaintiffs acknowledge that UMB is not in violation of § 326.3 but claim that the purpose of § 326.0 was violated because without adequate staffing, the purpose of establishing appropriate security procedures is violated.  However, the purpose as stated in § 326.0 is to give authority to the FDIC to require each member bank to produce a written security program with appropriate security measures.  Concerns raised by employees, even suggestions that the law should be expanded or changed—in this case, to add staffing requirements to the list of security protocols—are not the same as reports of violations of existing law.  The regulation does not

---

[20] *Balfour*, 2006 WL 3760410, at *14.

require UMB to abide by any staffing requirement.  Therefore, as a matter of law, whether UMB has understaffed its branches or not, it cannot be in violation of 12 C.F.R. § 326.0 for such understaffing.  The claim for retaliation in violation of public policy is therefore dismissed.

Regarding the breach of implied contract claim, Plaintiffs have already filed a Stipulation of Dismissal (Doc. 53) in which the parties stipulate that claim is dismissed.  As that claim has already been voluntarily dismissed at the time of this order, there is no need for the Court to analyze its merits.  Accordingly, that part of the motion is denied as moot.

**IT IS THEREFORE ORDERED** that Defendant's Partial Motion to Dismiss (Doc. 42) is **GRANTED IN PART, DENIED IN PART AS MOOT**.  Count I is dismissed.

**IT IS SO ORDERED.**

Dated this 21st day of July, 2020.

*[signature]*

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE